

DANIEL ZEMEL, ESQ. (NY, NJ)
660 BROADWAY ST. SUITE 203C
CLIFTON, NEW JERSEY 07013
PHONE:   (862) 227-3106
FAX:       (862) 204-5901
DZ@ZEMELLAWLLC.COM

June 3, 2021

**Via ECF:**
United States District Court
Eastern District of New York
The Honorable Brian M. Cogan
225 Cadman Plaza W
Brooklyn, NY 11201

      Re: **Gross v. TransUnion LLC**
         **1:21-cv-01329**
         **Joint Letter**

Honorable Court,

  The Parties submit this Joint Report in accordance with Your Honor's Order dated May 25, 2021.

 I. Summary of Claims

   a. Plaintiff

  Between 2013 and 2018, Mr. Gross had a mortgage held and serviced by Pennymac Loan Services (PLS). In 2019, Mr. Gross reviewed his TransUnion credit report and learned that Private National Mortgage (PNMAC) was reporting this loan to TransUnion. Mr. Gross disputed the information in November 2019. In response, TransUnion informed Mr. Gross that the information was accurate as reported. Unhappy with the results of his dispute, in December 2019, Mr. Gross requested of TransUnion to explain who was contacted and how the conclusion of the investigation resulted in the account being reported the same way. TransUnion represented to Plaintiff that it had contacted PNMAC directly and it was PNMAC that verified the information. Over time, Mr. Gross continued disputing the account into 2020 where Mr. Gross's disputes began to address the improper status of the account.[1]

---

[1] The credit reporting contested by Mr. Gross in this regard was addressed by *Gross v. Trans Union LLC, et al.*, 1:20-cv-04192-BMC concerning a subsequent dispute letter in February 2020. (Initial Litigation).

1

In truth, TransUnion never contacted PNMAC which Plaintiff did not understand or become aware of until the Initial Litigation was filed. During the course of discovery, it became apparent that TransUnion in fact contacted a different company—PLS. Accordingly, TransUnion's earlier representation to Mr. Gross that it had contacted PNMAC to verify the information is false. Further, TransUnion's reporting was both false and inaccurate to the extent it was publishing information to Plaintiff's creditors indicating Plaintiff maintained a loan with PNMAC. Plaintiff never had a loan with PNMAC and PNMAC never reported any information to TransUnion.

    b.  Defendant

<u>Plaintiff's Claims Are Barred By Claim Preclusion.</u>

The Complaint <u>should</u> be dismissed on a future Motion for Judgment on the Pleadings in this purported FCRA case where Plaintiff improperly attempts to revive his previously dismissed lawsuit against Trans Union.  Plaintiff <u>again</u> falsely claims Trans Union violated the FCRA regarding its reporting and reinvestigation of his admitted late mortgage payments by reporting his lender as PNMAC, LLC instead of its subsidiary Penny Mac Loan Services, LLC.

All of Plaintiff's claims were or could have been brought in Plaintiff's prior lawsuit that this Court dismissed on January 12, 2021 and are barred by the broad doctrine of *res judicata*, specifically, claim preclusion.

II.    Jurisdictional Basis

    a.  Plaintiff

Mr. Gross brings the instant matter under the Fair Credit Reporting Act (FCRA). While presenting a federal question, Plaintiff brought suit in state court as he does not believe the Court has jurisdiction in this matter. The reason for this is the nature of Plaintiff's claims and the previous rulings of the Court. Specifically, Plaintiff brings claims alleging violation of 15 U.S.C. §§ 1681e(b), 1681i(a)(7), and 1681g(a)(2) for TransUnion's false statements that they had contacted PNMAC during the course of their investigation and the issuance of a credit report with the incorrect furnisher of information. Nowhere within the Complaint does Plaintiff seek to relitigate the improper late status of the account.

The Court has previously addressed each of the sections raised in this action in a similar claim in *Shimon v. Equifax Info. Servs. LLC*, 431 F. Supp. 3d 115, 123 (E.D.N.Y. 2020), *affirmed at Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88 (2d Cir. 2021). In *Shimon*, Equifax falsely advised Mr. Shimon that during the course of its investigation of

---

Specifically, Mr. Gross alleged that he was being reported as currently late years after the account was closed.

his dispute, it had contacted the New York Civil Court. In truth, Equifax did not contact the Civil Court but instead contacted LexisNexis, its public records vendor. The Court held that although the information provided may have been false, it would not have resulted in any different of an outcome for Mr. Shimon. *Id*. at 123-124. For this reason, the Court found that Mr. Shimon could not establish Article III standing.

Under the *Shimon* analysis, Plaintiff's claims do not present an injury-in-fact. Although Plaintiff was entitled to truthful and accurate information under the FCRA, the failure to provide Plaintiff with this information does not result in standing as previously articulated by the Court. Thus, Plaintiff does not believe the court has jurisdiction over this matter.

Below, Defendant makes numerous false statements. First Defendant states that Judge Bloom advised Plaintiff that the claim is frivolous. No such ruling or suggestion was made. Judge Bloom simply disagreed with the procedural posture of the claim articulating that Plaintiff should have appealed Judge Cogan's prior decision of dismissal (which would not have enabled Plaintiff to bring this claim in any event), or sought leave to amend the complaint to add wholly new allegations *after* dismissal with prejudice (which is a procedural impossibility). Second, Defendant articulates that Plaintiff's complaint must be false given the specific allegations of harm and Plaintiff's admission within this letter that there is no injury-in-fact. Defendant believes that the allegation of harm including "injury to credit worthiness" or other emotional injuries must themselves establish injury-in-fact as a matter of law. The plaintiff in *Shimon* brought identical arguments to this Court however, and the Court clearly held that the misreporting of the source of information is insufficient to confer injury-in-fact holding: "However, if defendant had disclosed [the correct source], plaintiff still would have suffered the same emotional and out of pocket damages. He still would have undertaken the same actions to try to have his credit report amended the way he wanted it. Any damages he suffered were therefore not caused by the failure to disclose [the proper source[]"…though "there is an argument that plaintiff had some marginal [injuries]…I do not see how [Plaintiff] could [prove this]" *Id*. at *124. In this case as well, while Plaintiff has suffered injury from an inaccurate report, the marginal injury between obtaining disclosure of PLS as the source of furnishing information as opposed to PNMAC cannot satisfy the Article III requirements under *Shimon*.

   b. Defendant

Plaintiff Admits The Allegations Of His Complaint Are False And Judge Bloom Advised Him They Were Frivolous.

Trans Union is flummoxed by Plaintiff's jurisdictional statement. Plaintiff's Complaint alleges that, based on Trans Union's reporting, Plaintiff "suffered injury to credit worthiness and increased difficulty obtaining credit" and that Plaintiff "suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit port and credit worthiness." See Complaint 18-19. Now, months after Trans Union removed this matter to this Court and after Magistrate Judge Bloom questioned Plaintiff's counsel

on maintaining such frivolous claims, Plaintiff now argues that the allegations in his own Complaint are false and that he suffered no damages and therefore cannot demonstrate the required injury in fact.

III.  Legal Basis

    a. Plaintiff

Plaintiff brings suit under three separate sections of the FCRA. 15 U.S.C. §§ 1681e(b), 1681i(a)(7), and 1681g(a)(2). Each credit report issued by TransUnion that stated Mr. Gross had a credit obligation to PNMAC is patently false. TransUnion falsely advised Plaintiff that the source of the information was PNMAC and that the information was verified from them. This sequence of events occurred in response to a request for the source or furnisher of information dated December 2019. Complaint ¶ 10.

As the Court is aware, Plaintiff believed that the furnisher was indeed PNMAC which is why Plaintiff brought suit against PNMAC in the Initial Litigation. In May 2021, after learning PLS was in fact the furnisher in question, Plaintiff amended the Complaint of the Initial Litigation to the proper furnisher.

Below Defendant argues that Plaintiff's Initial Litigation addressing an entirely different legal theory and different facts, concerning a February 2020 dispute correspondence, precludes the instant claim. Defendant is incorrect for a number of reasons. First, the instant action concerns a sequence of events that occurred three months earlier in time than that addressed in the Initial Litigation. Second, because the cause of action and the factual underpinnings of the case are different, the evidence required for the instant claim is different than that needed in the Initial Litigation. There, Plaintiff needed to prove that reporting a status of "120 days late" is inaccurate or misleading, and that TransUnion failed to reasonably investigate by failing to fix the inaccurate status. Here, Plaintiff need only prove that TransUnion provided the incorrect source and furnisher of information. More specifically, here, Plaintiff need only prove that TransUnion received the relevant information from PLS as opposed to PNMAC. This evidence was not needed in the Initial Litigation because 1) that litigation concerned a dispute three months later, and 2) the proper identity of the source or furnisher of information have nothing to do with whether TransUnion conducted a reasonable investigation. Third, because the instant Complaint involves an injury that is not considered an injury-in-fact under the *Shimon* analysis, the claim could not have properly been procedurally raised in the Initial Litigation.

    b. Defendant

Claim Preclusion Bars Plaintiff's Claims

Plaintiff's claims are barred as the judgment on the merits of his previous lawsuit against Trans Union precludes Plaintiff from relitigating issues that were or could have

been raised in that action. See Allen v. McCurry, 449 U.S. 90, 94 (1980). Specifically, claim preclusion bars later litigation if: (1) there was a final judgment on the merits in the first action (2) by a court of competent jurisdiction; (3) the first action involved the same parties or their privities; and (4) the first action involved the same cause of action. In re Teltronics Services, Inc., 762 F.2d 185, 190 (2d Cir.1985). The claim preclusion doctrine bars not only issues that were adjudicated in the first proceeding, but also any other issue or claim that could have been raised or decided, but was not. See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).

There can be no dispute that a final judgment was entered on the merits in the first suit by a court of competent jurisdiction. See Overview Books, LLC v United States, 755 F. Supp. 2d 409, 415-16 (E.D.N.Y. 2010), aff'd, 438 Fed Appx 31 (2d Cir 2011) (finding a dismissal under Rule 12(b)(6) to be a final judgment for purpose of res judicata). Further, there is no question that Trans Union and Plaintiff were both parties to the original action and the current suit.

In addition, the causes of action dismissed in Plaintiff's previous suit arise from the same transactions as those brought in the current lawsuit. Whether a claim involves "the same cause of action" as a previously litigated claim turns on "whether the two proceedings in question concern the same transaction or series of transactions, whether the same evidence is needed to support both claims, and whether facts essential to the second proceeding were present in the first." Jones v. Dep't of Army Bd. for Corr. of Military Records, 77 F. App'x 39, 40 (2d Cir. 2003).

In Plaintiff's previous lawsuit he claimed Trans Union was liable under 15 U.S.C. 1681e(b) (reporting procedures) and 15 U.S.C. 1681i (reinvestigation procedures) for its reporting of Plaintiff's mortgage and its reinvestigation into Plaintiff's disputes between 2018 and 2020. Plaintiff now brings almost identical claims and alleges that Trans Union Trans Union violated 15 U.S.C. 1681e(b) (reporting procedures), 15 U.S.C. 1681i (reinvestigation procedures) and 15 U.S.C. 1681g (disclosure procedures) based on Trans Union's reporting of same mortgage and Trans Union's response to the same disputes at issue in the previous lawsuit.

Moreover, Plaintiff's claims could have been raised in his prior suit – where he was aware of such claims as early as September 2020 when counsel for PNMAC filed a pre-motion letter addressing this topic and requesting dismissal and Plaintiff amended his complaint not once but twice prior to refiling his claims in State court. Despite filing Amended Complaints in the original action, Plaintiff made no effort to add claims he currently asserts and, instead, filed a state court action shortly after the Court granted Trans Union's Motion for Judgment on the Pleadings in the original action. Accordingly, this action arises out of the same "transaction or occurrence" as the earlier suit arose from the same reporting activity from Trans Union relating to the exact same tradeline during the exact same time period and Plaintiff's claims are barred.

IV.     Anticipated Motions

5

a. Plaintiff

Plaintiff anticipates filing a Motion for Remand.

b. Defendant

Trans Union anticipates filing a Motion for Judgment on the Pleadings and Sanctions.

Respectfully submitted,

/s/ *Daniel Zemel*
Daniel Zemel
**ZEMEL LAW, LLC**
660 Broadway
Paterson, NJ 07514
T: (862) 227-3106
F: (973) 282-8603
DZ@zemellawllc.com

/s/ *Camille Nicodemus*
Camille Nicodemus, Esq.
SCHUCKIT & ASSOCIATES, P.C.
4545 Northwestern Drive
Zionsville, IN 46077
Tel. 317-363-2400, Ext. 105
Email: cnicodemus@schuckitlaw.com
Counsel for Defendant Trans Union, LLC